IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOURNAL COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:07-00605 |
| v. ) | JUDGE HAYNES |
| ) | |
| WILLIAM SABO, ) | |
| PRIVATE LABEL MEDIA PARTNERS, ) | |
| LLC; and CRYE-LEIKE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Plaintiff, Journal Communications, Inc., ("Journal"), filed this action under 17 U.S.C. § 411(a) of the Copyright Act and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) against the Defendant Crye-Leike.[1] Plaintiff also asserts violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq. as well as several common law claims. Plaintiff's claims arise from a contract with Crye-Like, Plaintiff's former customer. Under this agreement, Journal published four issues of a magazine titled Crye-Leike Living for Crye-Leike. After a year, Crye-Leike cancelled the contract and hired William Sabo, Journal's former employee.

Before the Court is the Defendant's motion to dismiss (Docket Entry No. 30), contending that Plaintiff has failed to state a claim under the factual allegations in his complaint and the terms of the parties' contract. Plaintiff's response is that the allegations in his complaint are sufficient to assert all of their claims. (Docket Entry No. 51).

---

[1] Former Defendants Private Label Media Partners, LLC were dismissed by Agreed Order. (Docket Entry No. 58).

## A. Analysis of the Second Amended Complaint[2]

Journal publishes "newcomer' magazines and visitors publication sponsored by Chambers of Commerce, convention and visitors bureaus and travel offices. (Docket Entry No. 24, Second Amended Complaint at ¶ 1). In 2005, Journal approached Crye-Leike about publishing a magazine for Crye-Leike. Id. at ¶ 8. On November 9, 2005, Journal and Crye-Leike entered into the Publication Agreement ("Agreement"). Id. at Exhibit A. Under this agreement, Journal agreed to publish a magazine for Crye-Leike entitled Crye-Leike Living.[3] Id. at Exhibit A at ¶ 4. Crye-Leike was Journal's only customer for this publication and was "responsible for the total cost of the magazine." Id. Paragraph 6 of Agreement granted Crye-Leike the right to cancel the agreement upon certain conditions as follows:

> Term. This agreement is for a period of two years from the date, Journal will be the exclusive vendor for Crye-Like for custom agent magazine for three years and has the first rights to bid after the three years . . .
>
> Cancellation. Crye-Leike also has the right to cancel after the first year (4 issues) for any reason.

Id. at Exhibit a at ¶ 6.

Journal published four issues of Crye-Like Living over a year and Crye-Leike elected to exercise its right to cancel the Agreement under Paragraph 6 of the Agreement. Id. at Amended

---

[2] An amended complaint supercedes former complaints. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986).

[3] CRYE-LEIKE, CRYE-LEIKE HOME SERVICES and CRYE*LEIKE are all federally registered trademarks of Defendant Crye-Leike. See Docket Entry No. 11, Defendant's Motion to Dismiss, Exhibit 1 thereto. The Court may properly consider these registrations in determining Crye-Leike's Rule 12(b)(6) motion. See Wyster-Pratte Mgmt. Co., Linc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005) (on a motion to dismiss, "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.") (emphasis added, citations omitted).

2

Complaint at ¶¶ 20, 31. After the cancellation with Journal, Crye-Leike ordered publication of another magazine tilted Crye-Leike Lifestyle that was published by former Defendants Sabo and PLMP, that was owned by Sabo. Id. At ¶¶ 26, 32. Since leaving Journal, Sabo, a former Journal employee "made disparaging comments about Journal . . . and disclosed to Crye-Leike confidential information that he learned while at Journal . . . in an intentional effort to thwart any negotiations between Journal . . . and Crye-Leike." Id. at ¶ 35.

Journal asserts a copyright in the covers of the four published editions of Crye-Leike Living magazine, which were ordered and paid for by Crye-Leike. Id. at ¶ 37. Journal further alleges that the former Defendants and Crye-Leike "have copied significantly and substantially the covers of 'Crye-Leike Living' . . . ." Id. at ¶ 41. Journal alleges that it has applied to the United States Copyright Office for federal copyright registration for the covers (and only the covers) of the four editions of Crye-Leike Living. Id. at ¶ 38. Plaintiff contends that when the Register of Copyright receives his application, the Register has a statutory duty to examine the application to determine if "the material deposited constitutes copyrightable subject matter and . . . . the other legal and formal requirements of [the Copyright Act] have been met." 17 U.S.C. § 410(a).

The United States Copyright Office denied Journal's application. Id. at ¶ 38 and (Docket Entry No. 49, Motion to Dismiss Defendants at Exhibit A.[4] The Register refused the Journal's

---

[4]The Court may take judicial notice of the letter from the Register of Copyrights denying Journal's application for copyright registration. See Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999) (without converting a Rule 12(b)(6) to a summary judgment motion, "[c]ourts may . . . . consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies").

3

registration because the "Copyright Officer regards format, layout, book design, and the arrangement of material on the printed page, such as these magazine covers, as ideas or concepts," which "copyrights does not protect." Id. at Exhibit 1.

## Conclusions of Law

In deciding a Rule 12(b)(6) motion to dismiss, the Court can grant the motion only if the complaint's allegation "raise a right to belief above the speculative level." Bell Atlantic Corp. v. Twobly, _ U.S. _, 127 S.Ct. 1955, 1964-65 (2007). Yet, "the allegations of the complaint should be construed favorably to the pleader" Scheuer v Rhodes, 416 U. S. 232, 36 (1974) and the Court must "treat all of the well-pleaded allegations of the complaint as true". Miree v. Dekalb County, Ga., 433 U.S. 25, 27 n.2 (1977).

As to the Journal's copyright infringement claim, Crye-Leike argues that because the Journal does not have a registered copyright for Crye-Leike Living, this Court lacks subject matter jurisdiction over Plaintiff's copyright infringement claim. See 17 U.S.C. § 411(a) ("no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Crye-Leike argues that Journal's magazine cover that was submitted with an application for copyright registration cannot "stand in" for the entire magazine. A copyright application for a magazine must include two copies of the complete magazine. See 37 C.F.R. § 202.19(d)(1)(I).

The Court agrees that without a registered copyright, this Court lacks jurisdiction to entertain an infringement action. Murray Hill Publications, Inc. v. ABC Communications, Inc., 264 F.3d 622, 630 n.1 (6th Cir. 2001).

As to the denial of Plaintiff's application to copyright it publication under 17 U.S.C. §

4

701(e), the Register's determinations are subject to the Administrative Procedures Act. Under 5 U.S.C. § 706(2)(a), the judicial standard of review is abuse of discretion for the Register's refusal to register. Norris Indus., Inc. v. Int's Tele. Corp., 696 F.2d 918, 922 (11th Cir. 1983); Paul Morelli Design, Inc. v. Tiffany & Co., 200 F.Supp.2d 482, 485 (E.D. Pa. 2002). Journal argues for de novo review, but as the Supreme Court stated, "the Copyright Officer's determination in an infringement action is entitled to 'some deference.'" Dickinson v. Zurko, 527 U.S. 150, 165 (1999).

In its Second Amended Complaint, Journal alleges that "Defendants, acting in concert, have copied substantial portions of 'Crye-Like Living' through their publication of the spring 2007 agent magazine entitled 'Crye-Leike Lifestyle.'" (Docket Entry No. 44, Complaint at ¶ 41). Journal does not specify the "substantial portions" of the Crye-Leike Living cover that Crye-Leike allegedly copied. Exhibit B and F contain the mark CRYE-LEIKE, registered trademark of Crye-Leike and "Compliments of" and "Let me help me with our real estate needs," appears on some, but not all, of the four Crye-LeikeLiving covers.

An "original work of authorship" must be independently created and possess a minimal degree of creativity. Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991). Whether the phrases are protected expression under the copyright laws may be determined on a Rule 12(b)(6) motion as a matter of law. See Yankee Candle Co. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 34, n.5 (1st Cir. 2001) ("The extent to which the Yankee labels contain protected expression is a matter of law, determined by the court."). Some words and phrases do not meet this standard, as the Sixth Circuit explained:

> The federal regulations state that "words and short phrases such as names, titles,

and slogans" are not subject to copyright protection. See 37 C.F.R. § 202.1. In light of this regulation, the First Circuit considered whether certain phrases contained in the plaintiff's marketing brochure were copyrightable. See CMM Cable Rep. Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504 (1st Cir. 1996). In that case, a marketing firm had designed a call-in contest and certain publicity materials to promote the contest. The two phrases at issue were "if you're still 'on the clock' at quitting time" and "clock in and make $50 an hour." The Court rejected the marketing firm's argument that the phrases were subject to copyright protection. See id. at 1519 ("It is axiomatic that copyright law denies copyright protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations; on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection."). The Court concluded that even though the plaintiff had obtained a copyright in the brochures containing the phrases, "copyright protection does not extend to [the phrases'] ordinary employment phraseology which lacks the minimal level of originality."

Murray Hill, 264 at 622, 632-33.

In Murray Hill, the Sixth Circuit held that the allegedly infringing phrase, "Good morning. Detroit. This is J.P. on JR in the a.m. Have a swell day," was not copyrightable because there was "nothing more than a short phrase or slogan, dictated to some degree by the functional consideration inherent in conveying the desired information." Id. at 633; see also Homan v. Clinton, 1999 WL 430446, at *2 (6th Cir. June 14, 1999) (phrase "Building Bridges to the Future" ineligible for copyright protection).

Here, denying Journal's application for copyright registration of the four Crye-Leike Living magazine covers as a whole , the Register of Copyright stated that "copyright does not protect 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, illustrated or embodied; in a work." (Docket Entry No. 49, Motion to Dismiss, Exhibit 1thereto (quoting 17 U.S.C. § 102(b)). The Register informed Journal that "format, book design, and the arrangement of material on the

6

Case 3:07-cv-00605 Document 65 Filed 03/26/08 Page 6 of 14 PageID #: 958

printed page, such as these magazine covers" cannot constitute the subject of copyright registration because they are merely "ideas or concepts" and therefore not subject to copyright. Id. (emphasis added).

The Register's determination that the subject magazine covers are not entitled to copyright protection is consistent with 17 U.S.C. § 102(b) and Sixth Circuit precedents. Thus, The Court concludes that Plaintiff's purported copyright materials are not entitled to copyright protection, individually or collectively.

Journal's next claim is under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) that applies to "false designation[s] of origin" or "false or misleading description[s] of fact." Such designations must be likely to lead to confusion in the mind of a prospective purchaser of the specific good(s) at issue. 15 U.S.C. § 1125(a). In its amended complaint, Journal has dropped all references to any trade dress and its claim Section 43(a) claim is for false advertising. For false advertising claim under Section 43(a), Journal must allege the following:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence a deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; 5) there is some causal link between the challenged statements and harm to the plaintiff.

Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 689 (6th Cir. 2000) (citation omitted).

As to the first element, Journal identifies only two allegedly false statements made by

7

Crye-Leike.[5] Journal alleges that the termination of the Agreement was published in a short article in Crye-Leike's in-house newsletter that is distributed to Crye-Like associates and employees after Sabo was listed as publisher of Crye-Leike Living magazine. Journal insists that the in-house letter is made available to members of the public. The Second Amended Complaint does not allege that Sabo had plans to publish Crye-Leike Living at that time. The undisputed fact is that neither Sabo nor the Journal, published any issue of any magazine titled Cryle-Leike Living after 2006.

Journal next identifies a poster that allegedly hung in a Crye-Leike office in early January 2007 that featured a mock-up cover of magazine with the title Crye-Leike Living. (Docket Entry No. 44, Second Amended Complaint at ¶ 30 at Exhibit E. This poster plainly is not alleged to contain a false statement.

Crye-Leike contends that the Journal does not allege these statement are likely to influence the purchasing decision of a potential customer of Crye-Leike Lifestyle nor were the statements intended to deceive the recipients of that internal newsletter. Under the Lanham Act, a claim for likelihood of confusion due to allegedly wrongful activity must "'likely to cause confusion' in prospective purchasers' minds." Gray v. Meijer, Inc., 295 F.3d 641, 645 (6th Cir. 2002) (emphasis added). The relevant confusion is "that which affects the purchasing and selling of the goods or services in question." Lang v. Retirement Living Pub. Co., Inc., 949 F.2d 576,

---

[5]Journal identifies allegedly false statements made by Defendants Sabo and PLMP on the PLMP website (see Second Amended Complaint, Exhibit C, G, H), but those are not relevant as to Crye-Leike. As the Sixth Circuit explained, the first element of the test for false advertising requires that, for an individual defendant, "the defendant has made false or misleading statements of fact." Balance Dynamics Corp., 204 F.3d at 689 (emphasis added).

8

583 (2d Cir. 1991) (emphasis added); see also Am. Council of Certified Podiatric Physicians and Surgeons, 185 F.3d at 613 (6th Cir. 1999) (emphasis added) (in the context of a false advertising claim under Section 43(a), the allegedly false statement must likely "influence the deceived consumer's purchasing decisions.").

Here, the only "prospective customer" for either Crye-Leike Living or Crye-Leike Lifestyle is Crye-Leike. Under the Agreement, Crye-Leike was the sole purchaser of Crye-Leike Living. Thus, for a likelihood of confusion claim, Journal alleges some potential clients may be confused, but the Court cannot discern such clients beyond the level of speculation.

Journal next alleges a state law claim for unfair competition based on the same allegation of its copyright infringement claim. Section 301 of the Copyright Act provides that "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State," 17 U.S.C. § 301(a) (emphasis added). "[T]he scope of the Copyright Act's subject matter is broader than the scope of the Act's protections." Wrench v. Taco Bell Corp., 256 F.3d 446 (6th Cir. 2001). "As long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the State from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify. . . ." ATC Dist. Group, Inc. v. Whatever It Takes Trans. & Parts, Inc., 402 F.3d 700, 713 (6th Cir. 2005) (quoting NBA v. Motorola, Inc., 105 F.3d 841, 849 (2d Cir. 1997)).

To the extent Journal's count for state law unfair competition is based on any alleged wrongdoing "within the subject matter of copyright," the Court concludes that this claim is preempted. Even if not preempted, the Court concludes that Plaintiff does not identify a reasonable prospect for a likelihood of confusion. Gaylord Entm't Co. v. Gilmore Entm't

9

Group, 187 F.Supp.2d 926, 950 (M.D. Tenn. 2001) ("As with trademark infringement actions, likelihood of confusion is the essence of an unfair competition claim.").

Journal's next claim is a "passing off claim" in that Crye-Leike "intentionally confus[ed] the source and origin of 'Crye-Leike Lifestyle and/or Crye-Like Living.'" (Docket Entry No. 44, Second Amended Complaint at ¶ 65. These allegations are parallel Plaintiff's Lanham Act claim. "The same analysis that applies to the federal Lanham Act claims also applies to the state claims of unfair competition under Tennessee common law. . . ." McDonald's Corp. v. Shop At Home, Inc., 82 F.Supp.2d 801, 816 (M.D. Tenn. 2000). For the reasons stated in Journal's Lanham Act claim, the Court concludes that Journal's parallel state law claim for unfair competition claim should be dismissed.

Journal next claim is that Sabo and Crye-Leike breached Sabo's fiduciary duties to Journal. Under Tennessee law, this claim is limited to an employee. "A breach of a fiduciary relationship by an employee, using confidential information <u>obtained while employed</u> to the detriment of his employer." B & L Corp. v. Thomas & Thorngren, Inc., 917 S.W.2d 674, 681 (Tenn.Ct.App. 1995). Crye-Leike was never an employee of Journal and to this extent of Plaintiff's unfair competition claim fails to state a claim for relief. See Dada Int'l, Inc. v. Iverson, 9 F.Supp.2d 858, 862 (M.D. Tenn. 1998). Journal has dismissed Sabo, but alleges that with the publication of the Crye-Leike Lifestyle magazine, Sabo disclosed confidential or "proprietary information." (Docket Entry No. 44, Complaint at ¶ 80). Under Tennessee law, "[.] if a matter is disclosed by the marketed product, [i]t cannot be a secret." Eagle Vison, Inc. v. Odyssey Mutual, Inc., 2002 WL 19025, 615*4 (Tenn.Ct.App. Aug. 14, 2002). Given that Crye-Liek Living was published, it is difficult to discern what, if any trade secret, Sabo discussed with

10

Crye-Leike. This claim lacks merit.

Journal's breach of contract claim is that "Crye-Leike has breached the Publication Agreement by authorizing Sabo and Private Label to create, publish and distribute its agent magazine in violation of the three-year exclusivity provisions of the Publication Agreement." (Docket Entry No. 44, Second Amended Complaint at ¶ 80). Paragraph 6 of the Agreement states:

> This agreement is for a period of two years from the date. Journal will be the exclusive vendor for Crye-Leike for custom agent magazine for three years and has the first right to bid after three years...
>
> Cancellation. Crye-Leike also has the right to cancel after the first year (4 issues) for any reason.

Second Amended Complaint, Exhibit A at ¶ 6. Journal acknowledges Crye-Leike notice of cancellation on December 22, 2006, that is beyond a year after the execution of the Publication Agreement November 9, 2005) and after Crye-Leike's purchase of four issues of Crye-Leike Living from Journal. Id. at 9, 20, Exhibit B. Given Crye-Leike's right to cancel the Agreement "for any reason" after the passage of a year and the publication of four issues, Crye-Leike has not breached the contract. Journal alleges that after four issues, "Crye-Leike had the right thereafter to elect not to publish the magazine, without penalty; and that . . . for a period of three (3) years, Crye-Leike would not allow any other entity to publish its agent magazine." Id. at ¶ 8. The Agreement, however, does not contain any such language and to accept Journal's construction nullifies the Agreement's cancellation provision.

Journal's next claim is for intentional interference with business relationships. Journal alleges that Crye-Leike intentionally interfered "with Journal Communications' ability to pursue

11

other actual or potential clients by, among other things, posting misinformation regarding the origin of "Crye-Leike Living" on its publicly accessible website, thereby creating confusion among Journal Communications' potential clients." (Docket Entry No. 44, Second Amended Complaint at ¶ 77). As stated earlier, the only actual client for the publications Crye-Leike Living or Crye-Leike Lifestyle is Crye-Leike. Insofar as Journal's intentional interference claim is that Crye-Leike interfered with itself, this claim lacks merit. Although Journal alleges likelihood of confusion with its potential clients, but the Court is unable to identify such clients beyond the speculative level.

Plaintiff next claim is that Crye-Leike "knowingly and intentionally interfered with the business relationship between Journal and Communications and Sabo by encouraging Sabo to establish his competing business and to terminate his relationship with Journal Communications so Crye-Leike could more easily attempt to contract directly with Sabo and Private Label." (Docket Entry No. 44, Amended Complaint at ¶ 76). For a claim for intentional interference with business relationships, a plaintiff must prove, among other elements the defendant had "improper motive or improper means." Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002). "[I]mproper means" for this claim requires proof of "means that are illegal or independently tortious." Trau-Med, 71 S.W.3d at 701. The Tennessee Supreme Court has interpreted "improper motive" as requiring "that the defendant's predominate purpose was to injure the plaintiff." See id. at n.4 (emphasis added). In the absence of a covenant not to compete between Sabo and Journal, Sabo could leave Journal for any reason. A former employee is not barred from using his former employer's non-confidential information. Hickories Specialities v. B & L Labs, 582 S.W.2d 583, 587 (Tenn. Ct. App. 1979). A product

12

disclosed by a marketed product is not a trade secret. Id.

Journal's next claim is that under the TCPA, Crye Leike is engaged in false advertising and thereby creating customer confusion. In interpreting state consumer protection acts, federal courts apply the likelihood of confusion standard. Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1110, 1105 n.1 (6th Cir. 1991) (applying Tennessee law). This claim is a restatement of Journal's Lanham Act claim and this claim lacks merit.

Journal next claim that Crye-Leike aided and abetted Sabo's breach of contract of fiduciary duty. For this claim requires: (1) a fiduciary relationship between Sabo and Journal; (2) that a breach of Sabo's fiduciary duty; (3) Crye-Leike knowingly participated in that breach; and (4) that Journal's suffering of damages proximately caused by Sabo's breach. See In re Del-Met Corp., 322 B.R. 781, 816 (M.D. Tenn. 2005). A defendant may be held liable for "participating" in another's tort only if the defendant provided "substantial assistance" or encouragement" to the wrongdoer. Lawyers Title Ins. Corp. v. United Am. Bank of Memphis, 21 F.Supp.2d 785, 795 (W.D. Tenn. 1998).

For this claim, Journal alleges that Sabo "advised Crye-Leike about the competitive company he was establishing and discussed with Crye-Leike whether his new company in lieu of Journal Communications could publish Crye-Leike Living." (Docket Entry No. 44, Second Amended Complaint at ¶ 17). Journal, however does not allege that Crye-Leike "substantially assisted," or even "encouraged," Sabo to breach any duty owed to Plaintiff. Mere discussions by Sabo with Crye-Leike is permissible under Tennessee law. See B & L Corp. v. Thomas and Thorngren, Inc., 162 S.W.3d 189, 205 (Tenn.Ct.App. 2004) ("an employee may prepare to compete with his or her employer prior to termination from or resignation of employment").

13

Moreover, absent a covenant not to compete, the fact of Sabo competing with Journal does not constitute a breach of any contract. Thus, Journal's aiding and abetting of breach of fiduciary duty claim fails to state a claim as a matter of law.

For these collective reasons, the court concludes that the Defendant's motion to dismiss should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 26th day of March 2008.

WILLIAM J. HAYNES, JR.
United States district Judge